DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| v. | 1:24-cr-00005-WAL-EAH |
| **DANIEL MARVAL-NAVARRO,**<br>**DESAEL CARRENO-CARRENO,**<br>**FELIX JOSE-BERMUDEZ,**<br>**LUIS LUGO-MARVAL,** | |
| **Defendants.** | |

TO:  Evan Rikhye, Esq., AUSA
      Gabriel J. Villegas, Esq., AFPD
      Jason Gonzalez-Delgado, Esq.
      Antonio Bisbal-Bultron, Esq.
      Miguel Oppenheimer, Esq.
      Carl R. Williams, Esq.
      David J. Cattie, Esq.

## ORDER

**THIS MATTER** came before the Court for a hearing on March 12, 2024 on the Motion for Hearing re: Conflict of Interest Inquiry, filed by the Government on March 1, 2024. Dkt. No. 37. In the motion, the Government pointed out that the four Defendants in this case, for whom the Court had appointed counsel based on their indigency, were now represented by retained counsel. *Id.* The Government asked the Court to conduct a hearing to determine whether the retained counsel were being paid by someone other than the Defendants and, if so, whether defense counsel had a conflict of interest with the third-party payer, whether the Defendants waived such conflict, and whether the Court should accept such a waiver. *Id.* The Defendants filed a reply agreeing to a hearing concerning that conflict, and indicating that the Government agreed that the hearing should be held ex parte. Dkt. No. 40. In the meantime, the Court had, sua sponte, raised the issue of whether the two retained counsel,

each of whom would be jointly representing two Defendants, presented a conflict of interest as well. The March 12, 2024 hearing was conducted in two parts: the first part, concerning any third-party payer conflict with defense counsel, was held ex parte, and the second part, concerning any joint representation conflicts, was held in open court. After hearing evidence, the Court ruled from the bench that there was no evidence of any third-party payer conflict at this time. It then examined the Defendants concerning the joint representation conflict issue, and reserved decision. The Court concludes that there is no joint representation conflict at this time, will permit the appointed counsel to withdraw from representing the Defendants, and will permit each retained counsel to represent two Defendants. The Court will also permit the two attorneys seeking to appear pro hac vice to represent two Defendants each, once their pro hac vice motions have been granted, they have taken their respective oath, and they have filed notices of appearance.

## BACKGROUND

On February 13, 2024, the Government filed a complaint charging the four Defendants herein—Daniel Marval-Navarro, Desael Carreno-Carreno, Felix Jose-Bermudez, and Luis Lugo-Marval—with one count of conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846, and one count of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Dkt. No. 1. In the accompanying affidavit executed by Kelly Holmes, a special agent employed by the Department of Homeland Security, Immigration & Customs Enforcement, Homeland Security Investigations, Agent Holmes averred that on February 11, 2024 at 2310 hours (AST), Customs & Border

Protection aerial surveillance picked up a target vessel 67 miles south of St. Croix, heading north. Dkt. No. 1-1. The vessel attempted to flee from a Royal Navy ship. *Id*. During the pursuit, the vessel jettisoned 29 bales overboard and headed to the south shore of St. Croix. *Id*. On February 12, 2024 at 0251 hours, the vessel landed at Long Point and four subjects were observed through aerial surveillance jumping out of the vessel and heading to a brush area. *Id.* Their locations were transmitted to special agents on the ground who apprehended them. *Id.* Other agents approached the vessel and discovered 74 bales of contraband, which field tested positive for cocaine. *Id*. The total weight of that contraband was 2,169.5 kilograms. *Id.* The vessel's crew members were identified as the Defendants. *Id.*

At their initial appearances on February 13, 2024, the Court appointed counsel for all of the Defendants based on their indigency. Dkt. Nos. 4, 6, 8, 10.

On February 22, 2024, attorney Yuseph L. Lamboy moved for leave to appear pro hac vice ("PHV") on behalf of Defendants Carreno-Carreno and Jose-Bermudez. Dkt. No. 16. Attorney David Cattie, the local attorney who signed the pro hac vice application, filed a notice of appearance later that day on behalf of Defendants Carreno-Carreno and Jose-Bermudez. Dkt. No. 15.

On February 23, 2024, attorney Gustavo Olivieri moved for leave to appear pro hac vice on behalf of Defendants Marval-Navarro and Lugo-Marval. Dkt. No. 19. Attorney Carl R. Williams, the local attorney who signed the pro hac vice application, filed a notice of appearance on February 25, 2024 on behalf Defendants Marval-Navarro and Lugo-Marval. Dkt. No. 24.

*United States v. Marval-Navarro*
1:24-cr-00005-WAL-EAH
Order
Page 4

On February 25, two of the CJA appointed attorneys, Jason Gonzalez-Delgado, Esq. and Antonio Bisbal-Bultron, Esq., filed motions to withdraw, stating that Attorney Cattie had filed a notice of appearance for their respective clients, Carreno-Carreno and Jose-Bermudez, and Attorney Lamboy had filed a motion to appear PHV on behalf of both clients. Dkt. Nos. 20, 21. On February 26, 2024, the Court granted those motions, Dkt. Nos. 22, 23, but vacated them later that day and set a February 28 hearing by videoconference to discuss the issues presented. Dkt. Nos. 29, 30. The Court denied the motions to withdraw filed by the two other Court-appointed counsel, Gabriel J. Villegas, Esq., AFPD and Miguel Oppenheimer, Esq., for the other Defendants, Marval-Navarro and Lugo-Marval, respectively, raising a concern that there may be a conflict in retained counsel representing two Defendants at once—an issue that the parties should be prepared to discuss at the hearing. Dkt. Nos. 27, 28.

The Government then filed the instant Motion for a Conflict of Interest Hearing, which focused on the fact that the Defendants had been appointed counsel but about a week later, two retained local counsel filed notices of appearance, each on behalf of two Defendants, and two additional attorneys filed motions to appear pro hac vice, each on behalf of two Defendants. Dkt. No. 31. It therefore asked the Court to determine if a third-party was paying for these attorneys and, if so, whether the defense counsel had a conflict of interest. *Id.* If the Court determined there was a conflict, the Court should then ascertain whether the Defendants waived such a conflict and whether the Court should accept a waiver. The Government provided case law discussing possible third-party payer conflicts in such a circumstance. *Id.*

*United States v. Marval-Navarro*
1:24-cr-00005-WAL-EAH
Order
Page 5

The two retained local counsel (Attorneys Cattie and Williams) filed a joint response, stating that they did not object to the conflict of interest inquiry and would present evidence at the hearing to address the two issues raised by the Government. Dkt. No. 39. They agreed to the hearing but submitted that it should be held ex parte, as the stated purpose of the Government's motion was only to ensure the Defendants obtained conflict free representation or that they be advised of any conflict and waived such conflict. *Id.* The attorneys stated that the Government agreed to their ex parte suggestion. *Id.* Upon being prompted by the Court, Dkt. No. 41, three appointed counsel filed a notice that they agreed to the hearing, Dkt. No. 42, and the fourth appointed counsel joined the retained counsel's response. Dkt. No. 43.

An Indictment carrying the same two charges against each Defendant was issued on February 28, 2024. Dkt. No. 33. The Court changed the hearing date to March 12, 2024 in order that all attorneys and Defendants could be present. Dkt. No. 35.

As indicated above, the greater part of the March 12, 2024 hearing was conducted ex parte, where the Defendants (in person) and the attorneys seeking to appear pro hac vice (by videoconference) testified that the Defendants' families had paid the retainers of the retained local and PHV counsel. The Court ruled from the bench that there was no conflict on the third-party payer issue.

Nevertheless, some of the testimony during the ex parte portion of the hearing touched upon the joint representation issue. Jose-Bermudez and Carreno-Carreno stated that they had signed a letter written in English that Yusuf Lamboy, Esq. (who had filed an

application to be admitted pro hac vice on their behalf) had translated in Spanish for them that explained possible issues arising from joint representation. Marval-Navarro and Lugo-Marval testified that Gustavo Olivieri, Esq. (who had filed an application to be admitted pro hac vice on their behalf) provided them a copy of the same joint representation letter in English with a Spanish translation and they signed both. Attorney Lamboy averred that he translated the joint representation letter into Spanish on a Zoom call with Jose-Bermudez and Carreno-Carreno and explained its contents. All of the letters—entitled "Consent Letter for Joint Representation According to Rule 1.7 of the Model Rules of Professional Conduct"—were admitted into evidence.[1]

Attorney Lamboy further testified that if the two Defendants he sought to represent had claims against each other, he would be prohibited from representing them, but he did not see a conflict at this point and neither did the two Defendants. Similarly, Attorney Olivieri stated that he provided a copy of the conflict letter in English and Spanish to Marval-Navarro and Lugo-Marval, Attorney Williams explained possible joint representation issues to those Defendants and Attorney Olivieri explained those issues to their families. He did not see any conflicts at this time, and was not aware of any threats, force or influence on the two Defendants that caused them to sign the letter.

---

[1] The conflict letters explain in detail the text of Model Rule 1.7 concerning an attorney's joint representation of clients, the possible conflicts that may arise in that situation, including limitations on the attorney-client privilege, and that a conflict could result in the attorney being unable to continue to represent the client. The letter encouraged the client to ask counsel any questions and to sign the letter if he consented to the joint representation.

*United States v. Marval-Navarro*
1:24-cr-00005-WAL-EAH
Order
Page 7

During the multiple representation section of the hearing, AUSA Rikhye was present. He stated that potential conflicts in joint representation could be waived by the Defendants, and the Government took no position on the issue. If the individual Defendants were comfortable with the situation and executed waivers, that would be acceptable to the Government. Attorney Villegas, AFPD (appointed to represent Marval-Navarro) stated that he had spoken with his client about all potential joint representation conflict issues and Marval-Navarro was willing to waive any conflict. Attorney Villegas instructed him to inform the Court if a conflict should arise. The other Court-appointed attorneys stated that they had spoken with their clients in Spanish that day, during the break in the hearing, about possible joint representation conflicts and the Defendants all expressed that they would waive any conflict.

The Court then asked each Defendant directly whether they understood: that they had the right to have their own attorney represent them and no one else; that there could come a time that a conflict between that Defendant and the co-Defendant being represented by the same counsel could arise; and if so, they needed to notify their counsel so that the Court could be advised. The Court also asked each Defendant if all the rights they had about representation had been explained to them and, knowing all that, it was still their intent to waive their right to have their own independent counsel. Each Defendant answered all questions in the affirmative. The Court took the matter under advisement.

## DISCUSSION

Federal Rule of Criminal Procedure 44(c) provides:

> **(c) Inquiry Into Joint Representation.**
>   **(1) Joint Representation.** Joint representation occurs when:
>     **(A)** two or more defendants have been charged jointly under Rule 8(b) or have been joined for trial under Rule 13; and
>     **(B)** the defendants are represented by the same counsel, or counsel who are associated in law practice.
>   **(2) Court's Responsibilities in Cases of Joint Representation.** The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel.

Fed. R. Crim. P. 44(c). In addition, the standards for professional conduct that govern this Court and provide the basis for disciplinary action against attorneys are the Model Rules of Professional Conduct adopted by the American Bar Association. *Prosser v. Nat'l Rural Utils. Co-op. Fin. Corp.*, No. 08-cv-0107, 2009 WL 1252158, at *2 n.3 (D.V.I. May 1, 2009). Rule 1.7, entitled "Conflict of Interest: Current Clients" provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>     (1) the representation of one client will be directly adverse to another client; or
>     (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>     (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>     (2) the representation is not prohibited by law;
>     (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

*United States v. Marval-Navarro*
1:24-cr-00005-WAL-EAH
Order
Page 9

> (4) each affected client gives informed consent, confirmed in writing.

Model Rule of Pro. Conduct r. 1.7 (Am. Bar Ass'n 2024). Informed consent

> requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client. . . When representation of multiple clients in a single matter is undertaken, the information must include the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney-client privilege and the advantages and risks involved.

Model Rule of Pro. Conduct r. 1.7 cmt. 18.

In *Wheat v. United States*, 486 U.S. 153 (1988), the Supreme Court examined the conflicts that may lurk where defendants share the same counsel in criminal cases. Given *Wheat's* succinct description of the issue, the Court excerpts that decision at length:

> The question raised in this case is the extent to which a criminal defendant's right under the Sixth Amendment to his chosen attorney is qualified by the fact that the attorney has represented other defendants charged in the same criminal conspiracy.
>
> In previous cases, we have recognized that multiple representation of criminal defendants engenders special dangers of which a court must be aware. While "permitting a single attorney to represent codefendants . . . is not *per se* violative of constitutional guarantees of effective assistance of counsel," *Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978), a court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel. *See also Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). As we said in *Holloway:*
>
>> Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. . . . [A] conflict may . . . prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another. 435 U.S., at 489–490, 98 S.Ct. at 1181.

> Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.
>
> Thus, where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented. As the Court of Appeals for the Third Circuit stated in *United States v. Dolan,* 570 F.2d 1177, 1184 (1978):
>
>> [W]hen a trial court finds an actual conflict of interest which impairs the ability of a criminal defendant's chosen counsel to conform with the ABA Code of Professional Responsibility, the court should not be required to tolerate an inadequate representation of a defendant. Such representation not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court and the subtle problems implicating the defendant's comprehension of the waiver.
>
> Viewing the situation as it did before trial, we hold that the District Court's refusal to permit the substitution of counsel in this case was within its discretion and did not violate petitioner's Sixth Amendment rights. Other district courts might have reached differing or opposite conclusions with equal justification, but that does not mean that one conclusion was "right" and the other "wrong". The District Court must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court.

*Id.* at 159-60. For the retained counsel and pro hac vice applicants to continue in this action, the Defendants' waivers must be knowing and intelligent. *See United States v. Levy*, 25 F.3d 146, 151 (2nd Cir. 1994) ("If the court discovers that the attorney suffers from a severe conflict—such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation—the court is obliged to disqualify the attorney."). Courts

have "substantial latitude" to accept or reject waivers, "not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163.

Here, each Defendant was given a Consent Letter, the text of which followed Model Rule 1.7, that explained possible conflict issues that may arise when counsel jointly represents two (or more) defendants. The letter was either translated in written form, or translated verbally so that the Defendants could understand the text, and they signed the letters. The appointed counsel also explained the possible conflict issues surrounding joint representation on the day of the hearing. The Court questioned the Defendants individually if they understood their rights to an attorney who represented them individually and that conflicts could arise and, knowing this, whether they waived any conflict to joint representation. Moreover, Attorney Lamboy explicitly stated that if a conflict arose, he would withdraw, as did Attorney Olivieri.

Based on this evidence, the Court concludes that, at the present time, there is no actual conflict and there is no evidence of "a serious potential for conflict" by each retained attorney—both local counsel and pro hac vice counsel—representing two Defendants each. *Wheat*, 486 U.S. at 160. The Court also concludes that each Defendant knowingly and intelligently waived such conflicts by signing the conflict letters that were either translated in writing or orally; where retained and appointed counsel and proposed pro hac vice counsel variously explained the potential problems in joint representation; and where that

*United States v. Marval-Navarro*
1:24-cr-00005-WAL-EAH
Order
Page 12

understanding was confirmed by the Court upon questioning. The Defendants understand that if a conflict may arise later, they are to inform their counsel, who would inform the Court.

Accordingly, the Court holds that the joint representation in this case does not present an actual or potential conflict at this time. Thus, retained local counsel Carl R. Williams, Esq. may represent Defendants Marval-Navarro and Lugo-Marval, and David J. Cattie, Esq. may represent Defendants Jose-Bermudez and Carreno-Carreno. Further, pro hac vice counsel Yuseph L. Lamboy, Esq. may represent Defendants Jose-Bermudez and Carreno-Carreno once his PHV motion has been granted, he takes his oath, and he files a notice of appearance. Pro hac vice counsel Gustavo Olivieri, Esq. may represent Defendants Marval-Navarro and Lugo-Marval once his PHV motion has been granted, he takes his oath, and he has filed a notice of appearance. Further, the Court will now separately grant the motions by appointed counsel to withdraw.

The Court emphasizes that it finds no actual or potential conflict *at this time* in what appears to be a straightforward criminal prosecution of four Defendants apprehended after beaching a boat that allegedly contained bales of cocaine. But the case has just been initiated and the Government has not provided its discovery. *See Wheat*, 486 U.S. at 162-63 ("Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context where relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those

*United States v. Marval-Navarro*
1:24-cr-00005-WAL-EAH
Order
Page 13

thoroughly familiar with criminal trials. . . . A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants."). All local and PHV counsel are required to adhere to the ethical obligations set forth in Model Rule 1.7. If any possible conflict arises later in this case, where, for example, one Defendant wishes to plead and another wishes to go to trial, or where one Defendant indicates that another is more culpable, or where counsel has to decide whether to present a defense that helps one defendant more than the other, the Court expects the attorney to bring this matter immediately to the attention of the Court to determine whether such a conflict may be cause for the attorney being prevented from continuing to represent the two Defendants, as stated in their Rule 1.7 conflict letter.

Accordingly, it is hereby **ORDERED** that Attorney David J. Cattie may jointly represent Defendants Carreno-Carreno and Jose-Bermudez, and Attorney Carl R. Williams may jointly represent Defendants Marval-Navarro and Lugo-Marval. Once their PHV motions have been granted, they have taken their respective oaths, and they have filed notices of appearance, PHV Attorney Yuseph L. Lamboy may jointly represent Defendants Carreno-Carreno and Jose-Bermudez, and PHV Attorney Gustavo Olivieri may jointly represent Defendants Marval-Navarro and Lugo-Marval.

ENTER:

Dated: March 19, 2024

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE